```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JOHN SIMMONS,

                            Petitioner,
                                                              ORDER
            -against-                                         21-CV-1728-SJB

MERRICK B. GARLAND, U.S. ATTORNEY GENERAL,

                            Respondent.
----------------------------------------------------------------X
```

**BULSARA, United States Magistrate Judge:**

This order resolves two pending motions in limine: Respondent's Motion to Exclude Petitioner's Expert Witness's Report and Testimony (Resp't's Mot. in Lim. dated June 26, 2023 ("Resp't's Mot."), Dkt. No. 31) and Petitioner's Motion to Suppress the Deposition of Petitioner's Expert Witness (Pet'r's Mot. in Lim. dated June 26, 2023 ("Pet'r's Mot."), Dkt. No. 34).  Both motions are denied.

I. Respondent's Motion to Exclude Petitioner's Expert Witness's Report and Testimony

Respondent's motion contends that Mr. Shahar Cohen, Petitioner's expert witness, is not qualified to testify about Jewish and Israeli marriage and divorce law in 1965, and any testimony about which he is qualified to give is irrelevant.  (Resp't's Mem. of Law in Supp. of Mot. in Lim. ("Resp't's Mem. of Law"), attached to Resp't's Mot., Dkt. No. 31-1 at 4–5).

"It is a well-accepted principle that Rule 702 embodies a liberal standard of admissibility for expert opinions[.]" *Nimely v. City of New York*, 414 F.3d 381, 395 (2d Cir. 2005).  Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that: (a) the expert's

scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.[1]

Cohen offers to testify about Petitioner's father's marital status under Jewish law at the time of Petitioner's birth. (Cohen Expert Report ("Cohen Expert Report"), attached as Ex. 4 to Resp't's Mot., Dkt. No. 31-5 at 2; Pet'r's Mem. of Law in Opp'n to Resp't's Mot. in Lim. ("Pet'r's Opp'n"), Dkt. No. 35 at 1). But Respondent contends that Cohen "lacks the 'knowledge, skill, experience, or education' to analyze whether Petitioner's parents were married under Jewish and Israeli law in 1965." (Resp't's Mem. of Law at 4 (quoting Fed. R. Evid. 702)). This argument is without merit.

Mr. Cohen's curriculum vitae ("CV") indicates that he attended the Academic Law School, Ramat Gan, and has been a member of the Israeli Bar Association since 2001. (Translation of Cohen's Hebrew Curriculum Vitae ("Cohen CV"), attached to Pet'r's Opp'n, Dkt. No. 35-1 at 4). From 2009 to 2021, he represented the State of Israel in the Legal Aid Bureau in family court and rabbinical courts. (*Id.* at 4–5). In this capacity, he handled divorce petitions, annulments, division of property, visitation arrangements, and other family law issues. (*Id.* at 5). His CV further indicates he has "much experience in family mediation, in representation and conduct of legal campaigns in all

---

[1] "*Daubert*'s general holding—setting forth the trial judge's general 'gatekeeping' obligation—applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge. . . . [A] trial court *may* consider one or more of the more specific factors that *Daubert* mentioned when doing so will help determine that testimony's reliability. But, as the Court stated in *Daubert*, the test of reliability is 'flexible,' and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

areas of family law," and experience "both in the family courts and in the rabbinical courts." (*Id.*). At his deposition, he answered "yes" when asked, "Does your firm specialize in Jewish family law?" (Cohen Dep. Tr. ("Tr."), attached to Pet'r's Opp'n, Dkt. No. 35-2 at 19:17–19). He further testified that he specializes in "marriages and divorces, custody, visitation arrangements, calibrating the assets of the parties[.]" (*Id.* at 20:3–8). In the Court's view, this family law experience is sufficient to offer testimony on the issues of whether, under Jewish and Israeli law, Petitioner's parents were married in 1965.

Despite Cohen's family law experience and experience in Israeli marriages and divorces, including in rabbinical courts, Respondent objects to the fact that Cohen's CV does not list "Jewish and Israeli marriage and divorce law" as a specialty of his law firm. (Resp't's Mem. of Law at 5). But Cohen's experience listed on his CV and his testimony about the cases he has actually worked on is far more pertinent than his firm's specialty or what courses he took while in law school, (*id.* at 6), at least at the gatekeeping stage when deciding whether to exclude an expert entirely. The same is true about Cohen's failure to serve as a rabbi or on a rabbinical court. Though Respondent cites cases where courts have noted that rabbis possess the sole power and authority to interpret Jewish law, (*id.* at 7–8), none of those cases stand for the proposition that an expert cannot testify about how a rabbi has or will interpret relevant provisions of Jewish law.[2]

---

[2] The Court does not find the other cases cited by Respondent—in support of its argument that Cohen's testimony is not reliable—persuasive, because they involve experts in wholly different areas—shoe design or biomechanical issues, for instance. (*See* Resp't's Mem. of Law at 6–7, 11). None involve the exclusion of an expert who is being offered to testify about legal subjects, which lawyers often do. *See, e.g., Davies v. Davies*, No. 16-CV-6542, 2017 WL 361556, at *18 (S.D.N.Y. Jan. 25, 2017) (lawyer in private practice who devoted 40 to 45 percent of her practice to family law in French St. Martin permitted to testify as an expert on the legal system and what protections are

3

Nor could a court so hold, since doing so would make it impossible for anyone other than a practitioner of religion to be an expert in this case. Indeed, it would have the boomerang effect of disqualifying Respondent's own expert if he or she is not a rabbi.

Respondent then makes a series of arguments about Cohen's lack of reliability, based on, among other things, his acceptance of Petitioner's testimony, which Respondent alleges is false, and for his not speaking to Petitioner's mother. (*Id.* at 9–15). An expert is permitted to accept a party's version of events in drawing conclusions. *See In re Pretty Girl, Inc.*, No. 14-11979, 2022 WL 1051098, at *3 (Bankr. S.D.N.Y. Apr. 7, 2022) ("Rule 703 provides that an expert 'may base an opinion on facts or date in the case that the expert has been made aware of or personally observed.' The underlying facts or data do not need to be admissible so long as experts in the field would reasonably rely on the same." (quoting Fed. R. Evid. 703)). If that party's version of events turns out to be untrue, unreliable, or lacking in evidentiary basis, then the expert's opinions fall away. But it would be curious indeed—particularly in a bench trial, *see infra* at 5–6, to exclude an expert at the pretrial stage by concluding that Petitioner's theory of the case lacks merit. If the Court had already decided summary judgment or otherwise made clear that certain issues could not be disputed at trial, that would be one thing, but that is not this case. And as for not speaking to Petitioner's mother or conducting a more thorough investigation, these arguments go to the weight of Cohen's testimony, not its admissibility. *See Salahuddin v. United States*, 564 F. Supp. 3d 75, 85 (E.D.N.Y. 2021) ("At most, plaintiff's attacks on the factual basis for [the expert's]

---

available to victims of domestic violence in French St. Martin), *aff'd*, 717 F. App'x 43, 49 (2d Cir. 2017).

testimony go to its weight, not its admissibility.").[3]  The same is true for any argument that his testimony was self-contradictory or that his deposition contradicts his expert report.

This is not to say these arguments about Cohen's lack of specialized experience and lack of reliability are irrelevant in the Court's evaluation of Cohen's testimony.  To be sure, the Second Circuit has instructed that a "trial judge should exclude expert testimony if it is speculative or conjectural or based on assumptions that are 'so unrealistic and contradictory to suggest bad faith' or to be in essence 'an apples and oranges comparison." *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206, 214 (2d Cir. 2009) (quoting *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996)).  But "*Daubert* motions function somewhat differently in the context of bench trials[.]" *Town & Country Linen Corp. v. Ingenious Designs LLC*, No. 18-CV-5075, 2022 WL 2757643, at *2 (S.D.N.Y. July 14, 2022).  In a jury trial, there is some expert testimony that "is so unreliable that it is more likely to confuse the jury than to assist it." *Joseph S. v. Hogan*, No. 06-CV-1042, 2011 WL 2848330, at *2 (E.D.N.Y. July 15, 2011).  But in a bench trial, as would be the case here, the Court is the factfinder, and there is no risk of jury confusion.  Therefore, unless "the expert testimony amounts to pure speculation [such that] it would have no probative value and

---

[3] Respondent's argument that Cohen's testimony is irrelevant—because he does not opine about the marriage of Petitioner's parents in 1965—is contradicted by Cohen's report which quite plainly draws conclusions and makes observations about that time period. (Cohen Expert Report at 4, 7–9). Also, Respondent's cavil that Cohen's report relies on inadmissible hearsay is misplaced: "expert analysis is often based on reported information rather than firsthand knowledge, and that is no bar to its admissibility." *MacQuesten Gen. Contracting, Inc. v. HCE, Inc.*, No. 99-CV-8598, 2002 WL 31388716, at *2 (S.D.N.Y. Oct. 22, 2002).  To the extent that Respondent is arguing that the hearsay contradicts the other evidence in the record, that argument again goes to the weight to be afforded to the testimony.

would not assist the fact finder," (in this case, the Court), "expert testimony should be admitted so that the Court [can] have the benefit of live testimony and cross-examination to determine how much weight, if any, to give the expert's conclusions." *Id.* "[W]ithout the risk of poisoning the jury with misleading expert testimony of limited probative value, the Court can take in the evidence freely and separate helpful conclusions from ones that are not grounded in reliable methodology." *Id.* at *3 (citation omitted). In fact, "in a bench trial, the risk is with exclusion of expert testimony rather than with its admission—it is exclusion that has the potential for an indelible impact on the record; if the appellate court disagrees that the expert's testimony was unreliable, a review for harmless error will be thwarted." *Id.* Therefore, the Court declines Respondent's request to exclude Cohen's expert report and oral testimony at trial, as the Court will be assisted by his testimony and can determine what weight to give the testimony and report. *Victoria's Secret Stores Brand Mgmt., Inc. v. Sexy Hair Concepts, LLC*, No. 07-CV-5804, 2009 WL 959775, at *6 n.3 (S.D.N.Y. Apr. 2009) ("[W]here a bench trial is in prospect, resolving *Daubert* questions at a pretrial stage is generally less efficient than simply hearing the evidence[.]"). And indeed, after hearing Petitioner's expert testimony, the Court can strike it in its entirety, if it is so unreliable and irrelevant as to flunk Rule 702's admissibility threshold, or simply accord it no weight.

II. <u>Petitioner's Motion to Suppress Expert Deposition</u>

Petitioner seeks to suppress the deposition transcript of his own expert, because he claims that the contemporaneous translation of his testimony is unreliable and inaccurate. (Pet'r's Mot.). The motion is denied.

Notably, Petitioner provides no declaration from Cohen, alternative translation made by a certified interpreter, or any statement under oath to support the allegation of mistranslation. Yet, he claims there are "repeated inaccuracies." (Pet'r's Mem. of Law in Supp. of Mot. in Lim., attached to Pet'r's Mot., Dkt. No. 34-1 at 5). To support his claim, he relies on remarks of his Israeli counsel, Mr. Shamam, who spoke up and interjected during Cohen's deposition and claimed there were incorrect translations of Hebrew to English. (*Id.* at 4–5).

As a threshold matter, the motion fails because any objection to the translation, as reflected in the deposition transcript, could have and should have been made in the time necessary to correct the transcript. Under Federal Rule of Civil Procedure 30(e), a party may review the transcript or recording of a deposition, and "if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them." Fed. R. Civ. P. 30(e)(1)(B). Neither Cohen nor Petitioner asked to correct Cohen's testimony before the deposition concluded, thereby waiving their right to do so now. *Id.*; *see also* 8A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2118 (3d ed. 2010); *see, e.g., Rios v. Bigler*, 67 F.3d 1543, 1552 (10th Cir. 1995) ("[W]e cannot tell whether Plaintiff or Dr. Stanton-Hicks requested review, an absolute prerequisite to amending or correcting a deposition under Rule 30(e).").

And while it is correct that "Rule 30(e) contains no provision for suppression of depositions," *Harnage v. Lamont*, No. 21-CV-163, 2022 WL 2342872, at *1 (D. Conn. 2022),[4] "such a drastic remedy" is unavailable "absent evidence identifying errors in the

---

[4] The irrelevance of cases cited by Petitioner where a translation was contested should have been apparent by their captions. *E.g., United States v. Yildiz*, 85 F. App'x 239, 242 (2d Cir. 2004); (Pet'r's Mem. of Law at 5–6). They are all criminal cases (and one habeas petition) where there are almost never pre-trial depositions, and the timing

deposition testimony that require correction." *Id.* (collecting cases). There is no such evidence here. Petitioner's argument relies on the statements by Mr. Shamam, and one instance where the Government's counsel corrected the interpreter. (Pet'r's Mem. of Law at 3). Petitioner does not provide any additional evidence: he does not provide evidence of Mr. Shamam's fluency in Hebrew and English or his qualifications as an interpreter. In contrast, the interpreter at the deposition has "been accepted, and [has] testified in court, as an expert on the Hebrew language," and has "served as interpreter at more than 1,000 depositions." (Resp't's Mem. of Law in Opp'n to Pet'r's Mot. in Lim. ("Resp't's Opp'n"), Dkt. No. 32 at 17 (alteration in original) (quotations omitted)). On a straight weighing of the qualifications of the translators and weighing of the evidence, it is no contest: we have a well-qualified translator on one side who provided sworn, certified translation, and on the other, the random comments of an observer at the

---

requirements of civil Rule 30(e) has no application. In any event, in none of the cases cited by Petitioner was the translation actually excluded or stricken, save in one, *United States v. Ghailani*, 761 F. Supp. 2d 114, 121 (S.D.N.Y. 2011), which did not involve a deposition or in-court testimony.

8

deposition.[5] Add to that the failure to comply with Rule 30(e), there is simply no merit to Petitioner's motion. The Court declines to exclude the deposition transcript.[6]

## CONCLUSION

Accordingly, both Respondent's Motion to Exclude (Dkt. No. 31) and Petitioner's Motion to Suppress (Dkt. No. 34) are denied. The parties are directed to submit a joint pretrial order for trial by May 3, 2024, consistent with the Individual Practices of the undersigned.

SO ORDERED.

/s/ *Sanket J. Bulsara   March 20, 2024*
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York

---

[5] The Court finds Mr. Shamam's conduct at the deposition questionable, if not quite problematic. He was not counsel of record, since at the deposition, the expert is represented by Petitioner's counsel, Mr. German. (Tr. at 5:2–14). Mr. Shamam is introduced as Petitioner's Israeli lawyer. *(Id.* at 5:7–14). There is no doubt Mr. Shamam was entitled to attend and observe the deposition. But for an observer—a lawyer not admitted to practice in this District no less—to interject and interpose comments and objections of his own borders on interference in the taking of sworn testimony. Mr. Shamam could have, as other observers and co-counsel routinely do in other cases, made any concerns known to Mr. German, asked Mr. German to call a break, and permit Mr. German to interpose objections. But to do anything else is highly problematic, to say the least. The Court will not tolerate such misbehavior at the trial in this case.

[6] Petitioner's final argument—that the deposition should be stricken because the interpreter failed to translate "everything," (Pet'r's Mem. of Law at 10–11), is premised on the same set of meritless and unsupported arguments as the rest of the motion.